**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Ann Moulis, | No. CV-18-01385-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act").  Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 13, "Pl. Br."), the Commissioner's Response (Doc. 18, "Def. Br."), Plaintiff's Reply (Doc. 21, "Reply"), and the Administrative Record (Doc. 9, "R.").  For the following reasons, the decision is affirmed.

## I.    BACKGROUND[1]

Plaintiff filed her application for disability benefits on October 31, 2014, alleging disability as of June 27, 2014 due to spinal lumbar stenosis, two herniated discs, nerve pain in right leg, and knee disease and arthritis.  (R. at 15, 266, 273–75.)  Following denial of the application at the initial and reconsideration levels, a hearing before an administrative

---

[1]    The Court has reviewed the entirety of the medical evidence.  In lieu of providing a detailed summary of it here, the Court will reference and incorporate particular evidence as appropriate in its analysis.

law judge ("ALJ") was held on March 14, 2017.  (*Id.* at 15, 115–136.)  On May 18, 2017, the ALJ issued a written decision finding Plaintiff not disabled.  (*Id.* at 15–28.)  Therein, the ALJ found Plaintiff had "severe"[2] impairments of degenerative disc disease of the lumbar spine with radiculopathy, obesity, and mild degenerative changes of the knees.  (*Id.* at 18.)  Despite these impairments, the ALJ found Plaintiff retained the residual functional capacity ("RFC")[3] to perform "light"[4] work except that she could lift/carry 10 pounds frequently and 20 pounds occasionally; stand/walk for 6 hours; sit for 6 hours; and occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs but never ladders, ropes, or scaffolds.  (*Id.* at 19–20.)  She also had to avoid concentrated exposure to unprotected heights, vibration, and moving/dangerous machinery.  (*Id.* at 20.)  Based on this RFC assessment and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform past relevant work as a bookkeeper and retail manager and was therefore not disabled.  (*Id.* at 27, 131.)  Afterward, the Appeals Council denied review and the decision became final.  (*Id.* at 1–3.)

## II.    LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court only reviews issues raised by the party challenging the decision.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.").  The Court may affirm, modify, or reverse

---

[2]    An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[3]    "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

[4]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

the decision, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).  The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error.  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").  "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Trevizo*, 871 F.3d. at 675.  "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely."  *Id.*  "Even when the ALJ commits legal error, [the Court] uphold[s] the decision where that error is harmless."  *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."  *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis.  20 C.F.R. § 404.1520(a).  The burden of proof is on the claimant for the first four steps but shifts to the ALJ at step five.  *Ford v. Saul*, 950 F.3d 1141, 1148–49 (9th Cir. 2020).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Id.* at 1149 (citation and internal quotation marks omitted).  At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled, and the

inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to step five and determines whether the claimant can perform other work existing in significant numbers in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

### A.   The ALJ Did Not Err In Discounting Plaintiff's Allegations.

Plaintiff's first assignment of error is that the ALJ improperly discounted her subjective allegations of disabling pain and limitations. (Pl. Br. at 6–16; *see* R. at 117–29, 265–75.) Plaintiff testified that she had stopped working in 2014 due to pain in her back and leg. (R. at 117, 123–29.) She alleged, *inter alia*, that she cannot sit for more than an hour without having to lie down and that injection therapy has not helped. (*Id.* at 25, 118.)

In assessing a claimant's RFC, the ALJ considers a claimant's subjective statements and "determine[s] the extent to which [any] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the] symptoms affect [the claimant's] ability to work." 20 C.F.R. § 404.1529(a); *see* 20 C.F.R. § 404.1529(c)(2). Absent a finding of malingering, the ALJ must provide "specific, clear and convincing reasons" for discounting a claimant's subjective allegations. *Treichler*, 775 F.3d at 1102. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

2001).  Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.*  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099.  The ALJ may consider, *inter alia*: (1) "inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct," *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by regulation on other grounds*; (2) "whether the alleged symptoms are consistent with the medical evidence,"[5] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); (3) "whether the claimant takes medication or undergoes other treatment for the symptoms," *id.*; and (4) any "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  *See also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); *see generally* 20 C.F.R. § 404.1529(c).

Here, the ALJ first discounted Plaintiff's allegations on account that they were not entirely consistent with medical evidence in the record.  (*Id.* at 20–24.)  Although the ALJ noted various abnormal findings made by Plaintiff's pain specialist, Dr. Ramoun Jones, including, *inter alia*, decreased range of motion, tenderness, and positive straight leg raises as well as MRI's showing various abnormalities in Plaintiff's spine, the ALJ noted that other "objective clinical findings and observations contained in the record support a light level of exertion."  (*Id.* at 21 (citing records).)  In particular, the ALJ noted that in March 2015 Plaintiff's primary care provider, Dr. Lucia Soto, found a "normal range of motion, muscle strength, and stability in all extremities with no pain on inspection," subsequent to Plaintiff undergoing injection therapy with Dr. Jones.  (*Id.* at 22 (citing *id.* at 406–09), 449.)

---

[5]     "[H]owever, an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence."  *Lingenfelter*, 504 F.3d at 1040 n.11; *see* 20 C.F.R. § 404.1529(c)(2).

Dr. Jones had administered injection therapy to Plaintiff from December 2014 to October 2016 until a change of insurance reportedly made the injections financially burdensome. (*Id.* at 429–58, 493–535, 545–54.)  As noted by the ALJ, Plaintiff consistently reported 80-85% relief immediately following administration of the injection.  (*Id.* at 21–22 (citing *id.* at 449–51 [December 2014], 444–47 [January 2015], 439–43 [February 2015], 514–16 [January 2016], 508–12 [February 2016]), 118.)  The ALJ also noted four examinations conducted by another primary care provider, Dr. Lucia Gregorio, which were unremarkable for neurological or musculoskeletal deficits.[6]  (*Id.* at 23, 483–85 [April 1, 2016], 486–88 [April 19, 2016], 540–41 [November 14, 2016], 542–43 [December 13, 2016]; *see id.* at 484 ["Negative for joint stiffness, joint pain, joint swelling, leg cramps, sciatica, fracture"; "Negative for . . . gait abnormality"], 487 [same], 541 [same], 542 ["AMBULATORY, NO OBVIOUS PAIN"]).)  Lastly, the ALJ noted findings by multiple providers, including Dr. Jones, of a normal gait and station.  (*Id.* at 22–23 (citing *id.* at 434–38 [March 2015] , 430–32 [May 2015], 514–16 [January 2016], 508–12 [February 2016], 493–97 [June 2016], 542–43 [December 2016]).)

The Court notes the clear conflict between the treatment notes of Drs. Soto and Gregorio and those of Dr. Jones.  For instance, while Drs. Soto and Gregorio consistently found no pain or abnormalities on examination, Dr. Jones consistently found decreased range of motion, positive straight leg raise tests, and tenderness.  (*See, e.g.*, *id.* at 432, 534, 542, 409.)  Given that the ALJ–not the Court–is "the final arbiter with respect to resolving ambiguities in the medical evidence," *Tommasetti*, 533 F.3d at 1041, and "[w]here [the] evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld," *Trevizo*, 871 F.3d at 674–75, the Court defers to the ALJ's resolution of this conflicting evidence.  In light of this deferential standard, the Court finds that the ALJ's finding that the aforementioned clinical findings and observations were inconsistent with

---

[6]     Both Plaintiff and the ALJ repeatedly misspell Dr. Gregorio's name as "Gregoria" and "Gregario," respectively.  (*E.g.*, Pl. Br. at 17; R. at 26.)  The Court will spell Dr. Gregorio's name as it appears in the treatment notes.  (*E.g.*, R. at 483.)

Plaintiff's alleged limitations was proper and supported by substantial evidence. Accordingly, this inconsistency with the medical evidence was a clear and convincing reason for discounting Plaintiff's allegations. 20 C.F.R. § 404.1529(a); *see Lingenfelter*, 504 F.3d at 1040; *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

In dispute, Plaintiff argues that "medical records [are] not inconsistent when [the] claimant described symptoms with more detail to [a] specialist than to [a] general practitioner." (Pl. Br. at 10 (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1200 (9th Cir. 2008)).) However, this argument is unavailing given the *objective* nature of the findings at issue. It is immaterial what Plaintiff's *subjective* descriptions to Drs. Soto and Gregorio were versus what they were to Dr. Jones. The ALJ reasonably relied on the normal, *objective* findings made by Drs. Soto and Gregorio and concluded that they were inconsistent with Plaintiff's allegations of disabling limitations.

Additionally, Plaintiff argues that it was "unreasonable [for the ALJ] to infer pain symptoms/limitations did not exist based on [Dr. Soto's March 2015] exam for unrelated conditions." (Pl. Br. at 10.) In support, Plaintiff cites *Widmark v. Barnhart*, 454 F.3d 1063, 1067–68 (9th Cir. 2006) for the proposition that it is "reasonable to expect [a] doctor to focus attention on the subject of [the] exam." (*Id.*) However, *Widmark* does not direct a finding of error here. In *Widmark*, the ALJ had rejected the opinion of a treating physician because, *inter alia*, "'[n]o other physician has cited any significant restrictions related to right thumb impairment.'" *Id.* at 1067 (brackets in original). The Court of Appeals rejected this reason, stating that "[t]o reject [the physician's] thumb opinion based on the absence of another thumb opinion in the record, the ALJ would have had to [impermissibly] *infer* from this absence that Widmark's other examining physicians did not comment on any restriction in his ability to do fine manipulation because none existed." *Id.* (emphasis added). Here, the ALJ did not have to "infer" anything because Dr. Soto's findings–as well as Dr. Gregorio's–spoke for themselves. Unlike the ALJ in *Widmark*, the ALJ here did not premise his conclusion upon any "absence" of findings, but rather on *actual* findings made by Drs. Soto and Gregorio during their examinations. Dr. Soto's *express*

findings of "normal range of motion, muscle strength, and stability in all extremities with no pain on inspection" directly undercut Plaintiff's allegations. (R. at 409.) The reason Plaintiff presented to Dr. Soto is immaterial. The findings were made, and the ALJ was therefore entitled to consider them as relevant medical evidence.

Lastly, in support of her allegations of disability, Plaintiff cites to examination notes from Dr. Curtis Miller, an orthopedic surgeon who evaluated her back and leg pain in early 2013 (prior to her alleged onset date of June 27, 2014). (Pl. Br. at 8; R. at 345–52.) Dr. Miller's notes, however, fail to support Plaintiff's assertion that she is "an individual who cannot sit, stand[,] or walk for any length of time without severe pain." (Pl. Br. at 7.) At the latter of her two visits with Dr. Miller, Plaintiff reported that "with her anti-inflammatory, her pain is mostly gone."[7] (R. at 345.) Dr. Miller noted that "she is doing better" and suggested that she continue using the anti-inflammatories. (*Id.* at 347.) "Impairments that can be controlled effectively with medication are not disabling." *Warre*, 439 F.3d at 1006. Thus, Dr. Miller's notes neither support Plaintiff's allegations of disability nor her allegation of error by the ALJ.

In addition to being inconsistent with the medical evidence, the ALJ found Plaintiff's allegations inconsistent with evidence of effectiveness of medications and treatment in relieving her pain. (*Id.* at 21–23.) As previously discussed, the ALJ noted that injection therapy consistently provided 80-85% relief of pain. (*Id.* at 21–22 (citing records).) Additionally, the ALJ noted that lumbar reproducible ablation therapy was reportedly "beneficial" and that lumbar facet radiofrequency denervation provided 80% relief of pain. (*Id.* at 22 (citing *id.* at 534–35); 23 (citing *id.* at 493–97).) Moreover, the ALJ noted that Plaintiff "admitted her current dosing of her medications combined with a gentle low impact exercise regimen had allowed [her] to be more functional and productive." (*Id.* at 22 (citing *id.* at 534–35).) The ALJ also noted Plaintiff's denial of side effects or issues with her medications (Neurontin, cyclobenzaprine, oxycodone, tramadol,

---

[7]     As noted by the ALJ, Plaintiff also reported to Dr. Jones that "[s]he has used anti[-]inflammatories with some significant improvement in pain." (R. at 21, 456.)

and meloxicam).  (*Id.* (citing *id.* at 534–35).)  And, as previously noted, Plaintiff's primary care providers found no pain on inspection.  Thus, Plaintiff's allegations were properly discounted on account of this evidence, notwithstanding Plaintiff's reference to other evidence which might support a different conclusion (*see* Pl. Br. at 12).  *See Jamerson*, 112 F.3d at 1067 ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").  Here, there is substantial evidence to support the ALJ's finding that Plaintiff's pain was not as severe as she alleged based on the evidence of effectiveness of medication and treatment.  As such, this finding was a clear and convincing reason to discount her allegations of disabling pain. *Lingenfelter*, 504 F.3d at 1040; *Warre*, 439 F.3d at 1006.

The ALJ also properly found that Plaintiff's cane was not medically necessary.  (R. at 23; *see* Pl. Br. at 15.)  Although the ALJ noted that Plaintiff was "given" a cane by her pain specialist–once in May 2015 and again in October 2015–the ALJ found that there was insufficient documentation in the medical record to support its medical necessity and noted, in particular, that Plaintiff's alleged need for it was inconsistent with normal neurological and musculoskeletal findings made by Dr. Gregorio.  (R. at 22–23, 432, 530, 483–92, 540–44.)  Despite Plaintiff testifying that she uses a cane whenever she leaves her house, Dr. Gregorio consistently noted that Plaintiff was "negative" for "gait abnormality" and was "AMBULATORY [with] NO OBVIOUS PAIN."  (*Id.* at 126, 128, 484, 487, 541–42 (capitalizations in original).)  Additionally, as noted by the ALJ, earlier treatment notes from Plaintiff's other primary care providers between July 2015 and December 2015 fail to mention use of a cane.  (*Id.* at 22 (citing *id.* at 462–82).)  Thus, the Court finds no error in the ALJ's finding that Plaintiff's cane was not medically necessary where the medical record failed to establish a need for it and no medical provider described the circumstances for which it was needed.  *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).[8]

---

[8]      "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether

Lastly, the ALJ discounted Plaintiff's allegations on account of her "refusal to pursue additional treatment modalities" and "failure to pursue physical therapy and follow-up with [a] neurosurgeon" and because she was "routinely observed . . . [to be] in no acute distress." (*Id.* at 23.)  Given that the Court has found at least two of the ALJ's reasons for discounting Plaintiff's allegations valid as detailed above–(1) inconsistency with clinical evidence and (2) effectiveness of medications and treatment–it need not determine the validity of the ALJ's other reasons.  Even if the Court were to find error in these remaining reasons, it would not change the outcome of the case.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ's reliance on invalid reasons to discredit claimant's testimony constituted harmless error where ALJ had also relied on valid reasons).

### B.   The ALJ Properly Evaluated The Medical Opinion Evidence.

Plaintiff's next assignment of error is that the ALJ erred in rejecting the medical opinions of her treating primary care providers, Drs. Soto and Gregorio.  (Pl. Br. at 17–23; *see* R. at 25–26.)  Plaintiff also disputes the ALJ's reliance on the opinions of consultative examining physician, Dr. Paul Bendheim, and the State agency reviewing physicians.  (Pl. Br. at 23–25; *see* R. at 25–26.)

In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and other evidence," including medical opinion evidence.  20 C.F.R. § 404.1545(a)(3); *see* 20 C.F.R. § 404.1527.  In general, medical opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.*  An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough

_____

all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675.

### 1. The ALJ properly evaluated Dr. Soto's opinions.

The ALJ gave "[p]artial weight" to Dr. Soto's opinion. (R. at 25, 536–37 [July 2015 opinion].) Dr. Soto opined, *inter alia*, that Plaintiff could only sit, stand, and walk for less than two hours; would miss 4-5 days of work per month; and would be off-task 16-20% of an 8-hour workday. (*Id.* at 536–37.) She did not know how much Plaintiff could lift or carry or how well she could perform fine manipulation or postural maneuvers. (*Id.* at 536.) She did not indicate whether Plaintiff's impairments precluded an 8-hour workday. (*Id.*)

In evaluating Dr. Soto's opinion, the ALJ noted that Dr. Soto: (1) "did not give lifting/carrying limitations, which would not restrict [Plaintiff] from the lifting/carrying limitations of light work"; (2) "did not mention [Plaintiff] needed a cane to ambulate which is also consistent with the overall medical evidence"; (3) "did not answer whether conditions precluded an eight-hour workday"; and (4) "d[id] not provide an explanation [for Plaintiff's] restrictions in sitting, standing, and walking." (*Id.*) Moreover, the ALJ noted that Dr. Soto was a primary care physician and not an orthopedic doctor, pain management specialist, or neurologist and had deferred treatment of Plaintiff's lumbago to Dr. Jones. (*Id.*) As such, the ALJ noted that Dr. Soto "would not be able to assess [Plaintiff's] limitations since she was not treating the condition." (*Id.*) Furthermore, the ALJ found Dr. Soto's evaluation "unsupported by the overall medical evidence showing

mostly normal findings on exam" and "based solely on what [Plaintiff had] told her." (*Id.* (citing Dr. Gregorio's examination notes).)

The ALJ's reasons for assigning lesser weight to Dr. Soto's opinion are specific, legitimate, and supported by substantial evidence. As previously discussed, the ALJ noted normal objective findings made by Dr. Soto, as well as by Dr. Gregorio, and properly found that Plaintiff's cane was not medically necessary. The lack of support from Dr. Soto's own objective findings and her lack of explanation were valid reasons for discounting her opinion. *See* 20 C.F.R. § 404.1527(c)(3)[9]; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of a treating physician's opinion that "was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [claimant's] medical condition, and was based on [claimant's] subjective descriptions of pain"); *Thomas*, 278 F.3d at 957 (stating that the ALJ may reject the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"). Moreover, the fact that Dr. Soto deferred treatment of Plaintiff's condition to a pain specialist (*id.* at 411) was another relevant factor as well as the fact that she was not a specialist in the area of Plaintiff's orthopedic and/or neurological pain condition.[10]  *See* 20 C.F.R. §§ 404.1527(c)(1), (c)(5). Accordingly, Dr. Soto's opinions were properly discounted.

### 2. The ALJ properly evaluated Dr. Gregorio's opinions.

The ALJ gave "[n]o weight" to Dr. Gregorio's opinions. (*Id.* at 25–26, 538–39 [November 2016 opinion], 555–56 [February 2017 opinion].) Like Dr. Soto, Dr. Gregorio opined that Plaintiff could only sit, stand, and walk for less than 2 hours. (*Id.* at 538, 555.)

---

[9]    "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3).

[10]    Plaintiff notes that Dr. Soto is an "internal medicine specialist." (Pl. Br. at 19.) Be that as it may, the ALJ properly discounted her opinion because she was "not an orthopedic doctor, pain management specialist, or neurologist," *i.e.*, a specialist in the fields of medicine relevant to Plaintiff's condition. 20 C.F.R. § 404.1527(c)(5). (R. at 25.)

1    She further opined that Plaintiff could only lift less than 15 pounds and carry less than 10

2    pounds.  (*Id.*)  She limited Plaintiff to less than occasional (0-20% of the workday) bending,

3    reaching, and stooping and opined that she would miss 6 or more days of work per month.

4    (*Id.* at 538–39, 555–56.)   She stated that confusion and dizziness were "[m]oderately

5    severe" side effects of Plaintiff's medications, rendering her off-task for 16-20% of the

6    workday.  (*Id.* at 539, 556.)

7         In evaluating Dr. Gregorio's opinion, the ALJ noted that it "was clearly based on

8    subjective complaints and what [Plaintiff] told her" and that Dr. Gregorio "alleged a

9    diagnosis of lumbar stenosis[,] which was not supported by the MRIs," and "herniated

10   discs, which were not supported by the treatment records."  (*Id.* at 26.)  The ALJ further

11   noted that despite stating in her opinion that Plaintiff experienced dizziness from her

12   medications, Dr. Gregorio noted that Plaintiff was negative for dizziness on the day she

13   rendered her opinion.  (*Id.*; *compare id.* at 540 *with id.* at 539.)  Moreover, the ALJ noted

14   that Dr. Gregorio's neurological, musculoskeletal, and psychological exams were normal

15   that same day, as well as in April 2016.  (*Id.* at 26; *see id.* at 483–85, 540–41.)  The ALJ

16   also noted that Dr. Gregorio noted Plaintiff was "independent as to her activities of daily

17   living," "alert, oriented, . . .  comfortable, and in no obvious pain."  (*Id.* at 26; *see id.* at

18   541–42.)

19        These reasons are specific, legitimate, and supported by substantial evidence.  The

20   ALJ was free to consider the consistency of Dr. Gregorio's opinions with other evidence

21   in the record, including her own treatment notes, as well as the degree of supportability her

22   opinions had from the objective medical evidence, including her own clinical findings

23   made on examination.  Dr. Gregorio's normal examination findings as well as her notation

24   that Plaintiff was not dizzy were inconsistent with her opinions.[11]  As such, her opinions

25

26   [11]    Plaintiff argues that "the ALJ did not explain *how* the findings or reports conflicted

27   with Dr. Gregori[o]'s opinions of specific limitations . . . ."  (Pl. Br. at 21 (emphasis in
     original).)  In reading the ALJ's decision as a whole, particularly where the ALJ discusses

28   the relevant medical evidence (R. at 20–24), the Court is able to reasonably discern the
     ALJ's path and therefore finds no error.  *See Treichler*, 775 F.3d at 1099.

were properly rejected on these accounts.  *See* 20 C.F.R. §§ 404.1527(c)(3), (c)(4).  Given the opinions' inconsistency with and lack of support from Dr. Gregorio's own treatment records, the ALJ did not err in finding that the opinions were based "to a large extent" on Plaintiff's self-reports and therefore did not err in rejecting them on this account as well. *See Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

Given that the Court has found at least some of the ALJ's reasons for rejecting Dr. Gregorio's opinions to be valid, it need not determine the validity of the ALJ's other reasons (*id.* at 26) for doing so.  Even if the Court were to find error in the remaining reasons, the error would not be reversible since it would be inconsequential to the ultimate nondisability determination because some of the ALJ's reasons *are* valid as explained above.  *See Treichler*, 775 F.3d at 1099; *cf. Bray*, 554 F.3d at 1227 (holding that ALJ's reliance on invalid reasons to discredit claimant's testimony constituted harmless error where ALJ had also relied on valid reasons).

### 3.   The opinions of Dr. Bendheim and the State agency reviewing physicians constitute substantial evidence.

Consultative examining physician, Dr. Paul Bendheim, examined Plaintiff at the behest of the Commissioner in February 2015.  (*Id.* at 377–85.)  Based on his examination, Dr. Bendheim opined that Plaintiff was capable of light work with various postural and environmental limitations.  (*Id.* at 25, 381–83.)  The ALJ gave "[s]ignificant weight" to this opinion, noting that "updated records do not reveal worsening of [Plaintiff's] impairments."  (*Id.* at 25.)  Elaborating, the ALJ noted that "[a]lthough pain management records note decreased range of motion . . . treating sources . . . note [Plaintiff's] spine exam was unremarkable and she had full range of motion without pain."  (*Id.*)  The ALJ cited the previously discussed normal findings made by Dr. Gregorio in 2016, including Plaintiff's denial of joint stiffness, joint pain, joint swelling, leg cramps, sciatica, sleep disturbance, dizziness, fatigue, and fracture as well as the fact that her gait was noted as

normal without mention of a cane.  (*Id.* (citing records).)  Because of the consistency of Dr. Bendheim's opinion with this other evidence, it constituted substantial evidence supportive of the ALJ's nondisability determination.  *Thomas*, 278 F.3d at 957.

The State agency reviewing physicians likewise opined that Plaintiff was not disabled and capable of work at the light exertional level with various non-disabling limitations.  (R. at 26, 138–48 [reviewer opinion, initial level], 150–62 [reviewer opinion, reconsideration level].)  Their opinions, like Dr. Bendheim's, were consistent with the unremarkable/normal clinical evidence in the record and thus constituted substantial evidence supportive of the ALJ's nondisability determination.  *Thomas*, 278 F.3d at 957.

Prior to the hearing, Plaintiff objected to the admission of all three physicians' opinions into evidence and requested a subpoena compelling the physicians' attendance at a deposition or hearing in order "to ascertain the basis" of their opinions.  (Pl. Br. at 25; R. at 320–22.)  The ALJ denied this request.[12]  (R. at 15–16.)  Plaintiff argues that because the ALJ denied her request to subpoena Dr. Bendheim, his opinion could not constitute substantial evidence that the ALJ could base his decision on.  (Pl. Br. at 25.)  In support, Plaintiff cites *Richardson v. Perales*, 402 U.S. 389, 397 (1971).  (*Id.*)  However, as explained by our Court of Appeals, *Perales* established that "even in the absence of cross-examination, an adverse medical report may constitute substantial evidence of nondisability."  *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983); *see Perales*, 402

---

[12]   "When it is reasonably necessary for the full presentation of a case, an administrative law judge . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses . . . ."  20 C.F.R. § 404.950(d)(1).  A request for a subpoena must "give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena."  *Id.* § 404.950(d)(2).  Here, the ALJ found that Plaintiff's request failed to comply with these requirements, other than being timely.  (R. at 16.)  In particular, the ALJ found that "[t]he reviewing and consultative examiner's testimony has not been established as reasonably necessary to the full presentation of the case."  (*Id.*)

- 15 -

1   U.S. at 402.[13]   Moreover, "[a] claimant in a disability hearing is not entitled to unlimited
2   cross-examination, but rather 'such cross-examination as may be required for a full and
3   true disclosure of the facts.'"   *Solis*, 719 F.3d at 302 (quoting 5 U.S.C. § 556(d)).   "The
4   ALJ, therefore, has discretion to decide when cross-examination is warranted."   *Id.*

5        Here, Plaintiff does not show–nor even allege–an abuse of discretion by the ALJ in
6   denying her request to subpoena Dr. Bendheim.   (*See* Pl. Br. at 25.)   The mere fact that she
7   could not cross-examine Dr. Bendheim does not mean that his opinion is not "substantial
8   evidence."   *Solis*, 719 F.2d at 302.   Because Plaintiff fails to show an abuse of discretion
9   by the ALJ in denying her request to subpoena Dr. Bendheim, the ALJ was entitled to rely
10   on his opinion as "substantial evidence" in finding Plaintiff not disabled.   *Id.*

11       **C.   Plaintiff's Allegation Of Error Regarding The Rejection Of Lay Witness**
12          **Testimony Was Not Properly Raised And Is Therefore Waived.**

13        In a footnote to her Opening Brief, Plaintiff argues that the ALJ erred in rejecting
14   lay witness testimony from her husband.   (Pl. Br. at 16 n.10.)   Plaintiff then notes in her
15   Reply that the Commissioner failed to address this argument in his Response, suggesting
16   that he conceded the issue.   (Reply at 6–7.)   The Court disagrees.   "A footnote is the wrong
17   place for substantive arguments on the merits of a motion, particularly where such
18   arguments provide independent bases for dismissing a claim not otherwise addressed in the
19   motion."   *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d
20   929, 935 n.1 (N.D. Cal. 2008) (noting that "[t]he use of footnotes to circumvent [page limits
21   prescribed by local rules of practice] is improper").   Because Plaintiff raised this argument
22   only in a footnote and nowhere in the main body of her brief, the argument was not properly
23   raised and thus did not merit a response from the Commissioner.   *Id.*

24       ///

---

25   [13]      Specifically, the Supreme Court held that "[an examining physician's report],
26   despite its hearsay character and an absence of cross-examination, and despite the presence
    of opposing direct medical testimony and testimony by the claimant himself, may
27   constitute substantial evidence supportive of a finding by the [ALJ], when the claimant has
    not exercised his right to subpoena the reporting physician and thereby provide himself
28   with the opportunity for cross-examination of the physician."   *Perales*, 402 U.S. at 402.

1      **IT IS THEREFORE ORDERED affirming** the decision of the Commissioner.

2      **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment

3  accordingly and terminate this case.

4      Dated this 8th day of September, 2020.

5

6

7

8                              Honorable Susan M. Brnovich
                               United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28